## GRAVELEY v. GRAVELEY.

1. Where an executrix, resident in England, of a testator who had died there, proved the will both in England and in South Carolina, she may be sued in the courts of this State; and having appeared and answered to the merits, she cannot object that she had been made a party by publication only.

2. When the facts stated in the complaint make out substantially a case for equitable relief, the court will so regard it, notwithstanding judgment for legal relief only was prayed.

3. Where a legacy of $2,000 was given by a testator, who died in England, to A. a citizen of this country, "to be held in trust for him by my executors and paid him with the accumulations of interest when he attains the age of twenty-one years," the will did not thereby create the distinct and separate office of trustees, but only imposed a duty on the executors as such. This case distinguished from *Anderson* v. *Earle,* 9 *S. C.* 461.

4. The executrix having invested in English consols an amount equivalent to American dollars of currency at their value in English coin one year after the testator's death. *Held,* that the legatee, on attaining his majority, could maintain an action against the executrix as such for the purpose of impeaching the fairness, propriety and legality of such transfer and investment.

5. Whether such executrix can be sued in the courts of this State depends upon (1) the domicil of the testator, and (2) if domiciled in England, whether there are assets of his estate still remaining here. These facts not appearing in the pleadings or in the proof, the case was remanded.

6. Matters stated in a reply are deemed to be controverted. *Code,* § 189.
Result only concurred in.

Before HUDSON, J., Charleston, December, 1881.

The complaint in this case was as follows :

The complaint of the above-named plaintiff alleges—

1. That John Graveley, the above-named testator, formerly of Charleston, in the county and State aforesaid, departed this life in England, on or about the 31st day of March, 1865, leaving, unrevoked and in full force and virtue, a last will and testament, a copy of which is hereto annexed as a part of this complaint.

2. That said will was proved in England, and subsequently thereto, to wit, on or about the 3d day of April, A. D. 1872, was admitted to probate on an exemplification thereof, by George Buist, Esq., judge of the Court of Probate for the county aforesaid, and then and there qualified Maria Torrens Graveley, one of the executors named and appointed by said will, and one of the defendants above named.

3. That the said testator *inter alia* bequeathed to John Graveley, the plaintiff herein, a legacy of $2,000 as follows, to wit, " I give and bequeath two thousand dollars each to John Graveley and Francis Porcher Graveley, the sons of my nephew, Cowlam Graveley, to be held in trust for them by my executors, and paid them with the accumulations of interest as they respectively attain the age of twenty-one years."

4. That John Graveley, the above-named plaintiff and legatee, has attained the age of twenty-one years, to wit, on or about the 18th day of September, A. D. 1879, and thereupon became entitled to the payment of the said legacy of $2,000, with the accumulations of interest thereon, but that he has not received the said legacy or any part thereof, nor have the accumulations of interest thereon nor any part thereof been paid him.

Wherefore, the plaintiff demands judgment for the said sum of $2,000, with the accumulations of interest thereon, at the rate

of seven per centum per annum, from the said 31st day of March, A. D. 1865, and the costs of this action.

The Circuit decree was as follows:

The testator, John Graveley, executed his will in 1862; he died in March, 1865. Letters testamentary were granted to his widow, Maria Torrens Graveley, as executrix, in England, in May, 1865, and subsequently in America, in 1872. By this will the testator bequeathed to John Graveley, the plaintiff, a legacy of $2,000, to be paid him, with the accumulations of interest, when he attained the age of twenty-one years, which age was attained by the plaintiff on or about the 18th day of September, 1879.

The testator was a British subject by birth, but was, according to the testimony of Cowlam Graveley, to which no exception was taken, a denizen of South Carolina, and made his fortune as a merchant of Charleston. At about the time of the breaking out of the late war in the United States he removed to England, was in that country at the date of the will, and died there in March, 1865, just about the close of hostilities in America. The will contained a similar bequest to Francis Porcher Graveley, who was a resident of Charleston, and who has been settled with. It contained also a bequest to the St. George's Society of Charleston, and the residue of the testator's estate is given in trust for his widow and children.

Subsequent to qualifying in this State, the executrix, in 1873, invested in England the sum of £327 11s. 5d. and £90 6s. 0d., which, with accumulations added, and legacy duty to the British government subtracted, she submits amounted to the sum of £521 4s. 10d., about the time of the coming of age of the plaintiff. This she was willing to pay to the plaintiff on condition that he receipted for his legacy, which he refused to do. And the plaintiff has been paid no part of his legacy, nor the accumulations. He now brings this suit to recover the legacy bequeathed to him, and the accumulations of interest thereon.

On the threshold the plaintiff is met with the objection on the part of the defendant that this is an action *ex contractu;* that the summons is in the form of such as are prescribed in the code

for actions *ex contractu;* that the summons and complaint fix the character of the proceeding, and that the complaint, containing no averment of the assent of the executrix to the legacy from which a promise may be implied, does not state facts sufficient to sustain an action *ex contractu* on the implied promise of the executrix. We, who are accustomed to the old equity practice, find great difficulty in realizing that the code has abolished the various forms of action, and that but one form of action (criminal actions excepted) now is known to the law, denominated a " civil action;" and yet it is a fact that by recent legislation all distinctions between actions at law and suits in equity, and the forms of the same, are abolished.

A civil action is commenced by service of a summons, the requirements of which are stated in section 151 of the code. Section 152 requires a notice to be inserted in such summons. In actions *ex contractu,* the summons must state that the plaintiff will take judgment (in case of failure to answer) for a " sum specified therein." In other actions that (in case of failure to answer) the plaintiff will apply for the relief demanded in the complaint. When the action is not *ex contractu,* it does not follow that the plaintiff must use the exact words of the section, if he does, in fact, give notice that he will ask for the relief demanded in the complaint; and in this action that is just what the summons gives notice to the defendant, the plaintiff will apply for in case of default, to wit, the amount of the legacy ($2,000), with the accumulations of interest thereon. The complaint herein states all the facts necessary to entitle the plaintiff to equitable relief, and the technical objection to the form of his summons, even if it could have availed the defendant on a motion to set it aside, now comes too late.

But it is not the summons which decides whether or not the action is, in its nature, legal or equitable; this depends upon the facts stated in the complaint. The complaint must state concisely the facts which constitute the cause of action, and when, as in this case, the summons and complaint are served together, the defendant has notice of the nature of the action. If the facts stated in the complaint entitle the plaintiff to legal relief, it will be granted, and if to equitable relief, that will be decreed.

Conceding the summons to be irregular, the plaintiff, at this stage of the proceedings, would be entitled to amend the same, and if it were necessary, I would allow him so to do.

The legatee is next met with the objection that this is the ancillary jurisdiction, and that he cannot here hold the executrix to account for the legacy. I do not find it incumbent on me to determine the question of domicil thus raised, for the case can now be decided on other issues. This I do not regret, as the defendants claim that the question is not presented in the pleadings and that the raising of it at the hearing has in some measure operated as a surprise to them. I avoid, therefore, resting the decree on this issue, but were it necessary to decide it, I should hold that the question of domicil was properly raised, and that, from all the facts before me, the domicil of the testator, at the time of his death, was in Charleston. To this conclusion I arrive, not from the mere language of witnesses, but from the facts and circumstances proved. The evidence shows that the testator made his fortune in Charleston, resided there up to about the time of the civil war, was a denizen of this State, married a Charleston lady, his children were born in that city, and most of his estate, of which we have knowledge, was in this country.

'Tis true he went to England about 1860 to reside during the war, and being in that country in 1862, he executed his will, in which, as his executrix and executor, he appoints his widow, a South Carolinian, and a merchant of Charleston, the place where the bulk of his fortune lay. Just about the close of hostilities he died (March, 1865). I cannot gather from these circumstances a purpose on his part to permanently sever his wife and children from the friends and associates of their lives and the home of their birth, nor himself from his interests in this country. On the contrary, my opinion is that his stay in England was occasioned by the conflict in America, and was only of a temporary character. His domicil in this State having been proved, the evidence that it was lost is not sufficient.

But in rendering this decree I will treat this administration as ancillary. And now as to the right of the legatee to proceed in this jurisdiction, I deem no higher authority requisite than the

G

case of *Harvey* v. *Richards,* 1 *Mason* 381. That case expressly rules that legatees and distributees, as well as creditors, have the right to demand distribution of the estate in the ancillary jurisdiction where the necessities of the estate do not otherwise require, and the law of the domicil as to the order of distribution is duly regarded. I hold it to be the duty of a State to protect its own citizens, whether legatees or creditors, and this court will not send a legatee, a citizen and resident of South Carolina, where ample assets are, where the executrix has qualified, without cause, to a foreign tribunal for redress.

Nor will it, where, as in this case, no cause is shown for the exercise of comity, remit the assets to a foreign country merely. to compel the legatee to follow them. If the condition of the estate, or the ends of justice demanded it, the court would remit the assets, but such is not the case here; no allegation or pretense of insufficiency of assets is alleged; on the contrary, the executrix professes her readiness to pay a sum, the result of an investment made in England, no reason having been suggested for remitting the funds in the hands of the South Carolina executrix to England; the legatee is entitled to recover his legacy here, and such, I am of opinion, was the intention of the testator, for the use of the word "dollars" in connection with the legacy, the appointment of a Charleston merchant and a Carolina lady as executor and executrix, and the scheme of the will, all tend to create this belief.

It is unnecessary to look into the investment in England, or consider its propriety; sufficient it is that the legatee demands his legacy in this forum of competent jurisdiction, under such a state of facts as entitles him to relief. I am of opinion that the plaintiff is entitled to recover the amount of his legacy, with interest from one year after the testator's death, at the rate of seven per cent. per annum.

It is therefore ordered, adjudged and decreed that the plaintiff do recover against the said Maria Torrens Graveley, executrix of the last will and testament of John Graveley, deceased, the sum of $4,198, together with the costs and disbursements of this suit, to be levied of the goods and chattels which are of the said testator, the said John Graveley, deceased, in the hands of

the said Maria Torrens Graveley, as executrix, as aforesaid, to be administered, and if she has not so much thereof in her hands to be administered, then to be levied of the proper goods and chattels of the said Maria Torrens Graveley.

*Memorandum.*—As defendants' counsel is fearful that the language of this decree does not, with sufficient fullness and correctness, set forth the grounds of his objection to the plaintiff's cause of action, both as to form and substance, and may be construed as having found facts against him, as for example, the denizenship of John Graveley, the testator, I have here to remark that it is not designed, in the least, to put the defendants' counsel in any position which might be at variance with the facts; nor can he be so placed, as all legal positions are still left to be fully taken by exceptions to the judgment, and the facts of the case are derived almost entirely from record testimony, and that taken by commission.

Other matters are stated in the opinion of this court.

*Messrs. Simonton & Barker,* for appellants.

*Messrs. T. W. Bacot* and *Lord & Inglesby,* contra.

October 25th, 1883. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action brought to recover a legacy from Maria Torrens Graveley, executrix, bequeathed to the plaintiff by the will of John Graveley, deceased. The bequest is in the following words: "I give and bequeath two thousand dollars each to John Graveley and Francis Porcher Graveley, the sons of my nephew, Cowlam Graveley, to be held in trust for them by my executors, and paid them, with the accumulations of interest, as they respectively attain the age of twenty-one years."

The testator was a British subject, who, for many years, had resided in the city of Charleston, in this State, where he carried on the business of a merchant, and, where he accumulated most, if not all, of the property he left at the time of his death. About

the beginning of the late civil war between the States—the exact time does not appear—he went to Leamington, in England, where he died before the war ended, on March 31st, 1865, leaving a will which bears date June 27th, 1862, and of which Maria Torrens Graveley, his widow, was named executrix, and Cowlam Graveley, of Charleston, executor. The beginning of the will is in these words: "This is the last will and testament of me, John Graveley, late of Charleston, in the State of South Carolina, but now of Leamington Priors, in the county of Warwick, England."

The will was admitted to probate at Birmingham, England, on May 27th, 1865, and letters testamentary granted to Maria Torrens Graveley, power being reserved of making the like grant to Cowlam Graveley, the other executor, who, by formal deed, renounced and disclaimed the "office of trustee," and declined to accept the devises and bequests made to him by the will upon certain trusts thereby declared; but he has not renounced the "office of executor," either here or in England. On April 3d, 1872, Mrs. Graveley also qualified as executrix in this State. In the application for administration in England, the executrix stated that the value of the estate was under £9,000; and it appeared by the inventory and appraisement in 1872, when she qualified in South Carolina, that the property in this State amounted to the face value of $53,212, of which $19,000 was stated to be doubtful, showing, it would seem, that much the larger part of the estate was at that time in South Carolina.

On February 6th, 1873, according to the answer of the executrix, she invested for the plaintiff, in three per cent. consols of England, such a sum of English money as would, on March 31st, 1866, have purchased $2,000 of American currency, then greatly less valuable than gold, £327 11s. 5d., and added thereto £90 5s. 2d. for interest thereon from March 31st, 1866, to February 6th, 1873, being at the rate of four per cent. per annum. According to this statement of the executrix, the legacy of $2,000, "with accumulations of interest" from March 31st, 1866, to September, 1879, when the plaintiff became of age, a period of more than thirteen years, amounted to something less

than $2,500, which she offered to the plaintiff as his legacy. He declined to accept this result, and, after some correspondence, this action was commenced December 20th, 1879. The executrix being in England, an order of publication was made against her, and copies of summons and complaint served on her January 15th, 1880.

The defendant executrix answered to the merits, claiming, among other things that, as executrix, she had paid the legacy to herself as trustee; that she was no longer liable as executrix, and the plaintiff was bound to accept the results of the investment which she had made for him in England; stating in the last paragraph of her answer that "these defendants [her daughters, as legatees, had been impleaded with her,] deny the right of the plaintiff to institute suit in this court against them, or any of them."

The cause came on to be heard by Judge Hudson, who held that the plaintiff was entitled to recover in this jurisdiction against the executrix; and gave judgment for the amount of the legacy, $2,000, in American money, and interest thereon from one year after the testator's death, at the rate of seven per cent. per annum, amounting to $4,198. From this decree the defendant executrix appeals to this court upon the following exceptions:

1. "That a foreign executrix who has administered the general estate of her testator in the jurisdiction in which her testator died, where his will was proved and registered, and where his executrix qualified and is accountable for such administration, cannot be sued in the jurisdiction of her ancillary administration generally, but can only be sued therein 'in respect of such assets' of her testator as may be held by her within such ancillary jurisdiction.

2. "That when such general executrix is resident beyond the jurisdiction of the courts of South Carolina, she cannot be made a party defendant to a suit in South Carolina by publication and service of summons at her home in a foreign country.

3. "That to make such non-resident executrix a party defendant to a suit in the jurisdiction of her ancillary administration in South Carolina, process against the assets of her testator,

which may be alleged to be held by the executrix in South Carolina, should be prayed.

4. " That an executrix holding ancillary administration cannot be held liable to a legatee upon a money demand only, in a suit, as upon contract, with no allegation of assent by the executrix to the legacy here, nor allegation of assets in her possession, nor charge of maladministration, nor of neglect in respect of such assets.

5. " That where, to a suit by a legatee generally demanding judgment of a specified sum of money as his legacy, the foreign executrix answers, objecting to the jurisdiction, and shows that she has administered the general estate of her testator in the original jurisdiction, where the will was admitted to probate, and where she is accountable for such administration; that out of the estate so administered abroad, she had, under the advice of learned counsel, laid aside and invested a fund in trust for the legatee, in pursuance of the terms of the will, and offers the legatee the results of that trust, so arising and so executed; and the plaintiff does not deny, but admits the facts, the complaint should be dismissed and the legatee be left to his remedy against the defendant for an account of her trust, or for a breach thereof.

6. " That an executrix is not liable to judgment for a sum of money claimed by a legatee, with damages, as for a wrongful detention, except upon allegation and proof of assent of the executrix to such legacy, from which assent a promise can be implied, and upon allegation and proof of the breach of such contract to pay, or upon allegation and proof of such wrongful detention.

7. " That for the proper exercise of the jurisdiction of the court against an executrix in a suit by a legatee, the allegations necessary to a suit for an account of such assets, and for enforcement of the trust involved, must be made, and the proper relief should be sought against the executrix in her character as trustee, and not as executrix.

8. " That a judgment against an executrix as for a *devastavit* cannot be rendered where no *devastavit* has been alleged or proven, and still less where the record shows that none has been committed.

9. " That a legatee (unlike a creditor) is bound by the will of a testator who gives him the legacy, and if the will directs the executrix to raise a fund out of the general estate, and to invest such fund and hold it in trust for the legatee, the will binds the legatee to seek the enforcement or execution of such trust against the executrix as trustee.

10. " That if the legatee, as *cestui que trust* to the executor under the will, could ask the courts of South Carolina to enforce a trust against an English executrix, holding in England a trust fund arising out of an administration of an estate in England, or if such legatee could complain in the courts of South Carolina against such executrix, domiciled in England, such executrix-trustee could only be brought into court to answer for a breach of trust by process of attachment against her own property here.

11. " That in such case the judgment could only be against her own property, and would not go against the assets of her testator.

12. " That upon the complaint in this case, his Honor, the presiding judge, erred in admitting testimony going to show the existence of assets within the jurisdiction, for the introduction of which testimony, either as to the fact of the existence of such assets, or their character or amount, no foundation had been laid in the pleadings, and for which plaintiff was necessarily unprepared.

13. " That his Honor erred in admitting testimony on the question of domicil as affecting the character of the administration held by defendant as executor in South Carolina, which question had not been put in issue by the pleadings."

At the threshold it is objected that the court has no jurisdiction of the case. If so, that should be an end of it. In order to pronounce an effective judgment, it is necessary that the court should have jurisdiction both of the subject-matter and of the person, which are distinct, and one may exist without the other.

The first question is, whether the court has jurisdiction of the person of Maria Torrens Graveley, as executrix of the will of John Graveley, deceased. She is the qualified executrix of his will in this State as well as in England; but being personally absent in England, the usual publication against absent defendants was made against her, and she was then served with copies of the

summons and complaint, informing her of the nature of the action. She did not make objection to the service, that she was sued as executrix and beyond the limits of the State, but, through her counsel, appeared, and "in her own right, and as executrix of the last will and testament of John Graveley, deceased," answered fully the allegations of the complaint, stating in the last paragraph of her answer that "the defendants [including her daughters] deny the right of the plaintiff to institute suit in this court against them, or any of them."

For manifest reasons, it is the policy of the law that an executor should be a resident of the State, or at least always ready to discharge here the duties voluntarily assumed, and to account, if so required, at least in respect to the assets, which may be located in the State. If a continuous absence of ten months can be shown, "such failure shall be received as a formal renunciation of the office of executor." *Gen. Stat.*, § 1892. It cannot be that an executor shall be allowed to hold his office under the law of the State, and yet disclaim all power on the part of the courts of the State to hold him to account as such executor. There can be do doubt, if the executrix had been here in person, that she could have been sued here—that is to say, brought into court as a party. The objection, then, must be as to the means—the process by which she was brought into court. It is not necessary to consider that subject; for it seems to us that, by answering to the merits, she properly submitted herself to the jurisdiction of the court, and the matter stands as if she accepted service or authorized her attorney to do so for her. *State* v. *Sarratt*, 14 *Rich.* 29; *Toland* v. *Sprague*, 12 *Pet.* 331.

This last case was foreign attachment in the United States Court, and it being decided that the publication was void on the ground that the United States Court had no right to issue such a process, it was yet held, that the defendant having appeared and pleaded to the merits, the judgment was valid. In delivering the judgment, Judge Barbour said: "The next inquiry is, whether, the process of attachment having issued improperly, there has anything been done which has cured the error. And we think there is enough apparent on the record to produce that effect. It appears that the party appeared and pleaded to the

issue.   Now, if the case were one of a want of jurisdiction in
the court, it would not, according to well-established principles,
be competent for the parties, by any act of theirs, to give it.
But that is not the case.   The court has jurisdiction over the
parties and the matter in dispute; the objection was that the
party defendant, not being an inhabitant of Pennsylvania, nor
found therein, personal process could not reach him; and that
the process of attachment could only be properly issued against
a party under circumstances which subjected him to process *in
personam.*   Now, this was a personal privilege or exemption
which it was competent for the party to waive.     *     *     *
After appearance and plea the case stands as if the suit was
brought in the usual manner." &c.

We do not, however, think that becoming a party, either by
process or consent, deprived the executrix of the right to make
any objection to the jurisdiction of the court as to the subject-
matter, and we understand that to be the intent of her answer,
denying "the right of the plaintiff to institute suit in this court
against her," which was equivalent to a plea to the jurisdiction
on the subject-matter in controversy, and so we shall consider it.

Considering the defendant as executrix in this State before the
court, we do not lay much stress upon the objections of want of
form in the complaint and prayer.   The spirit of the code is in
favor of amendments, and of having all cases, which have a
status in court, tried and decided upon their merits.   In most
cases, where it can be done without surprise or injustice to the
defendant, leave will be given to amend.   We think the law
upon the subject properly stated by Mr. Pomeroy in his work on
Remedies, § 580 :  "The prayer for relief is generally regarded
as forming no part of the cause of action, and as having no
effect, and as furnishing no test or criterion by which its nature
may be determined.   *   *   *   The fact that, after the allega-
tion of the facts relied upon, the plaintiff has demanded judg-
ment for a sum of money by way of damages, does not preclude
the recovery of the same amount upon the same state of facts by
way of equitable relief."   See *Wait Ann. Code* 325 ; *Hammond*
v. *N. E. R. R. Co.,* 6 *S. C.* 130 ; *Childers* v. *Verner,* 12 *S. C.* 1.

But considering the defendant as in court, and the cause of

action to be one for equitable relief, with proper prayers to charge the executrix, she still interposes what may be considered as a plea in bar to the jurisdiction of the court, viz., that as to the legacy claimed by the plaintiff, she is not liable as executrix, either in this court, or, indeed, in any other, in England or America, (for the objection goes to that extent,) for the reason that the legacy has already been paid by her as executrix to herself as trustee, and she can only now be made liable for the amount in her hands as such trustee, or, as stated for her at the bar, her conclusive answer to the plaintiff is, "that your legacy was not left to you, or to be paid to you, but it was left to the executor of your uncle, to be held by him or her in trust, to be invested, and with the accumulations of interest, to be so held until you should attain the age of twenty-one, when the investments or their proceeds were to be paid over to you by your trustee as the result of the trust. The legacy, as bequeathed, was paid by the executrix when she set apart, under the advice of counsel, a fund to be invested for you. The will placed your money in the hands of the executor without security, confiding in the honesty and fidelity of your trustee, and only by impeaching her action as your trustee, by specific allegations and proof of violation of duty, or breach of her trust, can you hope to recover money against her in this or any other court of equity."

We do not clearly see what difference it can make whether the defendant is held liable as executrix or as trustee, but as the point has been strongly pressed, and the ground of liability may have some bearing upon the right of the plaintiff to be paid out of assets as such, let us look a little into the matter. The clause of the will, under which this legacy is claimed, is as follows : " I give and bequeath two thousand dollars each to John Graveley and Francis Porcher Graveley, the sons of my nephew, Cowlam Graveley, to be held in trust for them by my executors, and paid them with the accumulations of interest as they respectively attain the age of twenty-one years." Do these words create two offices—that of trustee as separate and distinct from that of executor? It seems to us that the intention was only to impose a particular duty on the executors as such. It will be observed that the legacy is not given to the executor in trust for the

legatee, as in the case of *Anderson* v. *Earle,* 9 *S. C.* 461, where it was given "to my executors in trust for Henrietta and Eloise, to be invested in slaves for them, with ample power to sell and re-invest."

An executor is personally liable in "equity for all breaches of the ordinary trusts, which, in courts of equity, are considered to arise from his office. And it may here be observed, that when personal property is bequeathed to executors as trustees, the circumstance of taking probate of the will is, in itself, an acceptance of the particular trusts. Therefore, when the will contains express directions what to do, an executor who proves the will must do all which he is directed to do as executor, and he cannot say that, though executor, he is not clothed with any of these trusts." 3 *Wms. Ex., p.* 1894, and authorities in note (6 *Am. Ed.*)

But, even if there were two separate and distinct offices, would the alleged transfer by the executrix to herself as trustee be absolutely conclusive against the legatee, so that when he comes of age he would be bound to take, without challenge, what was offered to him and characterized as his legacy under his uncle's will, without any reference to the amount set apart, or to the currency, the interest, or the country in which it was invested? We cannot think so; that would be giving to the act of the executrix the force of a judgment, the effect of which would be to allow her, and not the testator, to fix the amount of the legacy and the manner of its payment. It may be that the purpose of the executrix was good, and that, in the operation of setting apart and investing a certain amount of English money, she had the assistance of an able solicitor and of counsel learned in the law, yet that was no more than her own act, the result of her own volition, *ex parte,* purely private, being neither "authoritative" nor "notorious," without the direction or sanction of any public authority, or having in it any of the elements of a matter *res adjudicata.* See *Newcomb* v. *Williams,* 9 *Metc.* 534, and other authorities in note to 3 *Wms. Ex., supra.*

Suppose that an executor, under like circumstances, should put down a legacy to himself, as trustee, at half its true amount, could it be claimed for an instant that such transfer would con-

clude the legatee? In such case, surely, he could go behind the transfer and investment and have the true amount ascertained, and this proceeding would not be against the party as trustee to charge him; for that would be an admission that the right amount had been transferred; but, on the contrary, the proceeding would be against him as executor, for not properly executing the will and paying the legacy in pursuance thereof. That is precisely the character of the plaintiff's claim. He does impeach the propriety and legality of this alleged transfer and investment. He says, in substance, that he has not received the legacy given to him by his uncle's will, properly construed; that he gave him an American legacy ($2,000 in American money) which, of course, meant coin; but that the executrix, construing the will as giving an English legacy, payable in American paper currency, much less valuable than gold, which currency was not even in existence when the will was executed, now claims upon this basis to have transferred and invested his legacy in England, and at English interest.

We think the plaintiff has the right to have the fairness of that alleged transfer and investment inquired into by a proceeding in equity against the executrix as such in any court where the executrix is amenable to account, in this country or in England.

That brings us to the question, whether the defendant, as executrix, is amenable in the courts of South Carolina for the ·legacy of the plaintiff, an American citizen, who was born and has always lived here. She insists that she is not liable to account here, for the reason that her administration in South Carolina must be regarded only as ancillary to that in England, where the testator died, and that the estate, so far as legatees are concerned, must be, and, indeed, has already been settled there. The question is somewhat intricate, and the authorities not in accord. Its solution must, to a large extent, depend upon two facts: First. Where was the domicil of the testator at the time of his death? and, second, whether there were assets of the estate still remaining here at the time the action was brought. And we think that these points do not appear with sufficient clearness,

either in the pleadings or proof, to enable us now to decide the question satisfactorily.

In regard to the question of domicil, there is, in the pleadings, no reference whatever, and the only evidence which could be considered as bearing upon the subject was the circumstances, and what fell out incidentally in the progress of the case. It did not appear at what precise time, or under what circumstances, the testator left Charleston—whether he intended only a temporary or permanent absence, or whether he left undisposed of any tangible property there, except, as appeared from the will, his " wines, liquors and plate." The defendants complain, as no such issue was made, that they were taken by surprise, and did not offer their evidence on the subject. The Circuit judge adverted to the question; but he did not base his decree in whole or in part upon it. He says: " I do not find it incumbent on me to determine the question of domicil thus raised; for the case can now be decided on other issues. This I do not regret, as the defendants claim that the question is not presented in the pleadings, and that the raising of it at the hearing has, in some degree, operated as a surprise to them. I avoid, therefore, resting the decree on this issue. But were it necessary to decide it, I should hold that the question of domicil was properly raised, and that from all the facts before me, the domicil of the testator at the time of his death was in Charleston."

In regard to the other fact mentioned as important, the matter stands in this way : The complaint did not expressly charge that there were assets of the estate remaining in the State at the time the action was brought, but such charge was made in the reply. The code, section 189, provides, that " every material allegation of the complaint, not controverted by the answer, as provided in section 170, and every material allegation of new matter in the answer constituting a counter-claim, not controverted by the reply as provided in section 174, shall, for the purpose of the action, be taken as true. But the allegation of new matter in the answer, not relating to a counter-claim, or of new matter in a reply, is to be deemed controverted by the adverse party as upon a direct denial or avoidance, as the case may require," &c. The answer of the defendants did not set up a counter-

claim; but was in the nature of a plea in bar, and, therefore, we cannot say that the very important fact in question may be considered as proved by the pleadings.

There was no actual proof upon the subject, except the record of administration papers from the office of the judge of Probate, in which was an inventory of the South Carolina property, consisting of notes, choses, stocks, &c., filed in 1872.  This action was brought in 1879, seven years after, and we are not informed whether anything, and, if so, what had been done with said bonds, stocks, &c., during that long interval of time.  The judgment below, without regard to the question of domicil, proceeded solely upon the view that there was property of the estate of the testator still within the State, when the action was brought in 1879, and that fact was presumed from proof of assets in 1872. Without now making any ruling upon the subject, we think the principle involved is too important for the decision to rest entirely upon such presumption of a jurisdictional fact, and that, before deciding the question, in case it should become necessary, it would be safer to have proper allegations and positive proof.

The judgment of this court is that the judgment of the Circuit Court be set aside without prejudice; and the cause remanded with leave to the plaintiff, if so advised, to amend his complaint by making proper allegations, so as to make the question of the domicil of the testator at the time of his death, and as to the existence of assets, their character and amount of the estate of John Graveley, in the State of South Carolina, where the action was commenced.

MR. CHIEF JUSTICE SIMPSON and MR. JUSTICE MCIVER concurred in the result.